DUPUY G. WARRICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98689.   Promulgated July 18, 1941.

*John E. Park, Esq.,* and *A. F. Hillix, Esq.,* for the petitioner.
*Benjamin L. Bird, Esq.,* for the respondent.

OPINION.

MELLOTT: Petitioner contends that he acquired the residence at West 69th Terrace in a transaction entered into for profit and that the loss sustained upon the disposal of the residence in 1933 is deductible under the provisions of section 23 (e) (2) of the Revenue Act of 1932.

Both parties agree that whether or not a loss is incurred in a transaction entered into for profit must be determined by the facts in each proceeding. Petitioner cites and relies upon a number of cases in which this Board has allowed as deductions losses incurred in connection with the sale of residential property where the predominant purpose in purchasing such property was to realize a profit on a subsequent sale, and where the use of the property for residential purposes was merely incidental. *Sydney W. Sinsheimer*, 7 B. T. A. 1099; *John N. Hughes*, 8 B. T. A. 206; *Henry J. Gordon*, 12 B. T. A. 1191; *Minnie L. Campe*, 17 B. T. A. 575; and *Marjorie G. Randall*, 27 B. T. A. 475. Respondent relies upon cases in which the predominant purpose in acquiring residential property was either not resale at a profit or where the use of the property for residential purposes from the time of its acquisition caused the transaction to lose the characteristics of a transaction entered into for profit, even though a profit-making motive might have existed at the inception of the transaction. *Henry DeFord*, 7 B. T. A. 630; affd., 29 Fed. (2d) 532; *Richard Loper Austin*, 17 B. T. A. 801; *W. H. Moses*, 21 B. T. A. 226; *D. A. Belden*, 30 B. T. A. 601; and *R. C. Bayliss*, 35 B. T. A. 1128.

At the hearing petitioner testified that his intention at the time he bought or traded for the West 69th Terrace home was to occupy it as a residence for the purpose of exhibiting it after it was furnished, that he intended to live in it until he could sell it at a profit, that he was not interested in this type of house as a permanent residence for his family, and that his primary interest was in larger grounds. Despite petitioner's testimony, we are not convinced that his predominant purpose in acquiring the West 69th Terrace prop-

erty was its resale at a profit. Immediately upon acquiring it he and his family moved in and used it for residential purposes. He had no other residence since he did not retain the Rockhill Road residence which he had been occupying since 1926, but used his equity in that property as part of the purchase price of the West 69th Terrace home. In furnishing this newly acquired house he appears to have used the furnishings of the Rockhill Road house in so far as they were adaptable. There was but slight difference in the size of the Rockhill Road and West 69th Terrace lots, and during the seven years he occupied the houses located on these lots he apparently made no effort to satisfy his expressed desire to secure a home with larger grounds surrounding it. Most people acquiring residential property believe they have made a good bargain; otherwise they would not buy. They hope or expect to make a profit when and if they sell it, and it is not unusual during their occupancy of such property for them to attempt to make a sale at a profit. But where, as here, an individual moves out of one residence into another, using his equity in the first as part of the purchase price paid for the second, and then continues to use the latter as a residence over a four-year period until, through a professional fee transaction, a larger and better home on a two and one-half acre tract is acquired, it would take stronger evidence than that submitted by petitioner to convince us that his predominant motive was to enter into a transaction for profit. As we view the transaction, petitioner acquired the West 69th Terrace property as a residence. As a result of its continued use as such, the purchase and sale of this property lost the characteristics of a transaction entered into for profit, even though a profit-making motive may have existed at the time of its acquisition. *R. C. Bayliss, supra.* Respondent did not err in disallowing the deduction of $6,500 as a loss incurred in a transaction entered into for profit.

The remaining issue relates to the note for $5,000 which petitioner executed and delivered to Mrs. Parrish on January 31, 1933, and which she returned to him endorsed in blank in June of 1935.

Petitioner contends that Mrs. Parrish made a gift of the note, and that respondent erred in including its face value, $5,000, in his income for 1935. Respondent takes the position that the facts belie that Mrs. Parrish made a gift of the note to petitioner in spite of the fact that she testified she intended to make a gift and that she was motivated solely by a desire to benefit petitioner as an expression of gratitude for numerous courtesies extended to her by him. Respondent urges that the return of the note should be treated as additional compensation to petitioner for the good job which he had done in defending her husband in the mail fraud suit and that the amount

of the note should therefore be included in petitioner's gross income.

The evidence on this issue convinces us that the note for $5,000 was not returned to petitioner as additional compensation for services rendered. Mrs. Parrish testified that she gave the note back to petitioner as an expression of gratitude for the many services and kindnesses that she had received from him; that petitioner never performed any legal or professional services for her; that from time to time, and especially during the time when she did not know the whereabouts of her husband, she had talked to petitioner as a friend about certain individual and personal problems; that petitioner had made it very clear at all times that any and all of the little things he had so graciously done for her were strictly acts of friendship; and that she intended when she returned the note to him to make a gift. Petitioner's testimony was to the same effect. He testified that during the time the note was held by Mrs. Parrish he paid the interest due thereon, and that at the time she delivered the note to him in 1935, she said: "I want you to know that there are a few people in the world who have some sense of gratitude. I have appreciated your friendship over a very difficult period. I have something I want to give you. Here it is." She then handed him the $5,000 note with her endorsement in blank. Petitioner also testified that the law firm which was entitled to participate in his earnings from legal services, when informed of this transaction, agreed that it had no interest in it.

Respondent's attempt to connect the delivery of the note to petitioner with his defense of Parrish in the mail fraud suit is based largely upon inference. Petitioner has proved to our satisfaction that when Mrs. Parrish delivered the note to him in 1935 she intended to, and did, make a gift. He was justified in treating it as such. It is our conclusion that respondent erred in adding $5,000 to the income reported by petitioner in his return for 1935, and this issue is decided in favor of petitioner.

*Judgment will be entered under Rule 50.*