Bernice R. Phillips v. Commissioner.
Phillips v. Commissioner
Docket No. 43645.
United States Tax Court
T.C. Memo 1954-93; 1954 Tax Ct. Memo LEXIS 164; 13 T.C.M. (CCH) 643; T.C.M. (RIA) 54198; June 30, 1954, Filed *164 Upon the facts, it is held, that petitioner is not entitled to a loss deduction under section 23(e)(1) or (2), I.R.C., upon the sale in 1947 of property which had been used continuously as the residence of petitioner and her family. Sanford Becker, C.P.A., 11 West 42nd Street, New York, N. Y., for the petitioner. S. Jarvin Levison, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined a deficiency in income tax for 1947 in the amount of $1,812.37. The only issue for decision is whether the loss sustained upon the sale of residential property, together with furnishings, is a personal loss and nondeductible, or a loss incurred in a trade or business, or in a transaction entered into for profit and deductible under section 23(e), I.R.C. If it is determined that the loss is deductible, it will be necessary to decide whether the petitioner is entitled to deduct the full amount of the loss or only one-half thereof, since the property was owned jointly by the petitioner and her husband. Findings of Fact The stipulated facts are found as facts, and the stipulation and the attached exhibits are incorporated herein *166 by this reference. The petitioner is a resident of Elberon, New Jersey. She filed an individual income tax return for 1947 with the collector of internal revenue at Trenton, New Jersey. In the return she listed her address as "Palmer Avenue, West Long Branch, New Jersey." Petitioner and Lloyd Phillips are husband and wife. They were married in 1933. They have two children both of whom were of school age in 1947. Lloyd Phillips is, and at all times material hereto was, engaged in the brokerage business with offices at 120 Broadway, New York City. In December 1944, a house located at 77 Park Avenue, Elberon, New Jersey, hereinafter referred to as the Park Avenue house, was purchased by the petitioner and her husband. Title was taken in their joint names. At the time of the purchase of the petitioner and her family were living in a rented house in the neighborhood of the Park Avenue house. The cost of the Park Avenue house to the petitioner and her husband was $12,000. The cost of the furnishings which were acquired with the house was $6,500. Park Avenue house by the petitioner and her husband, the The Park Avenue house contained 10 rooms, 6 of which were bedrooms. At the time *167 it was acquired by the petitioner and her husband it was in need of repairs and could not be lived in year-round. Between December 1944 and May 1945, the petitioner and her husband made extensive repairs and improvements to the Park Avenue house at a cost of $23,685.56. The repairs and improvements consisted, among other things, of installing a heating system and excavating a basement under the house. The petitioner and her husband also spent an additional $4,115.27 for furnishings. While the Park Avenue house was being remodeled, petitioner and her family continued to live in the nearby house which they had rented. Petitioner and her family moved into the Park Avenue house in about May 1945. They lived in the Park Avenue house from May 1945 until November 1947. During this period the petitioner and her family kept the bulk of their household furnishings and personal belongings in the Park Avenue house. The Park Avenue house and furnishings were sold by the petitioner and her husband in September 1947 for a total price of $38,000. The sales price of $38,000 was allocated in the contract of sale as follows: $28,000 to the real estate, and $10,000 to household furniture and furnishings. *168 A broker's commission of 5 percent or $1,900 was paid on the sale. The contract of sale was executed by both the petitioner and her husband, and it recites that they are "residing at 77 Park Avenue in the City of Long Branch, in the County of Monmouth, in the State of New Jersey." The contract of sale also provided that "it is further understood and agreed by and between the parties hereto that the sellers shall have the right and privilege of occupying the premises until December 1, 1947." The petitioner and her husband did not claim any deduction for depreciation on the Park Avenue house and furnishings for any taxable period from the date of its purchase through the date of its sale. On September 19, 1946, Lloyd Phillips and his mother, Ethel Phillips, jointly, executed a lease on a two bedroom apartment at 170 E. 77th Street, New York City, hereinafter referred to as the New York City apartment. The New York City apartment was leased by Lloyd Phillips and his mother throughout the year 1947. Prior to, during, and subsequent to 1947, the New York City apartment was occupied by Lloyd Phillips' mother and his aunt. Lloyd Phillips' mother was 67 years old in 1947. The lease on *169 the New York City apartment was executed by Lloyd Phillips and his mother jointly, at the insistence, and for the protection of the landlord. The rent for the New York City apartment was paid by Lloyd Phillips. The record does not disclose whether Lloyd Phillips' mother had any independent income in 1947. The petitioner and her family had lived in or near Elberon, New Jersey, since 1935 or 1936. From 1935 or 1936 until 1941 they lived at 55 Lawrence Avenue, Deal, a community adjacent to Elberon. They sold the Lawrence Avenue house in 1941. Shortly afterwards they purchased a house on Lincoln Avenue in Elberon where they resided until it was sold. The Lincoln Avenue house was sold in 1944 and the Park Avenue house was acquired shortly thereafter. While the Park Avenue house was being remodeled they lived for several months in a rented house in Elberon. From May 1945 until November 1947, petitioner and her family lived in the Park Avenue house, the property in question. After the Park Avenue house was sold they purchased a house on Palmer Avenue in West Long Branch, New Jersey where they resided until it was sold. This house was sold in 1952, and at the time of the trial of this pro-eeding *170 petitioner and her family were living at 149 Park Avenue, Elberon. This house was purchased in 1952. Lloyd Phillips filed a resident New York State income tax return for 1947. He listed as his residence on the return his office address at 120 Broadway, New York City. Lloyd Phillips did not have any income from any source other than his brokerage business during 1947. The petitioner's youngest son, who was about 10 years old in-1947, attended school in that year in Elberon, New Jersey. Since at least 1940, whenever the petitioner and her husband voted, they voted in New Jersey. During 1947 Lloyd Phillips registered his car or cars in New Jersey. At all times material hereto the residence of the petitioner and her husband was listed in the Manhattan Telephone Directory as in New Jersey. The petitioner's income tax return for 1947 disclosed a net long-term loss from the sale of the Park Avenue house in the amount of $10,219.12, a net long-term loss from the sale of the furnishings in the Park Avenue house in the amount of $1,325, and a net long-term loss of $1,792.65 from the sale of stocks, or a total net long-term capital loss of $13,336.77, 50 per cent of which or $6,668.39 *171 was taken into account. Petitioner also reported in her 1947 return a net short-term capital gain of $14,647.92, which after deducting her long-term capital losses resulted in a net gain of $7,979.53. In determining the deficiencies, the respondent disallowed the long-term capital loss resulting from the sale of the Park Avenue house and furnishings in the amount of $5,772.06 (50 per cent of $11,544.12) taken into account by petitioner in computing her 1947 tax. The Park Avenue house was acquired by the petitioner and her husband primarily for use as their personal residence. The Park Avenue house was the personal residence of the petitioner and her family from the date of its acquisition until the date of its sale. Any purpose on the part of the petitioner and her husband of buying the house for resale was abandoned when the property was appropriated for use as their residence. Petitioner and her husband did not maintain a family residence in New York City during 1947. Petitioner did not earn any income in 1947 as an interior decorator. Petitioner was not engaged in a business of buying and selling houses during 1947. Prior to and during 1947, the property at 77 Park Avenue, *172 Elberon, New Jersey, was not held by the petitioner and her husband primarily for sale to customers in the ordinary course of a trade or business. The property at 77 Park Avenue, Elberon, New Jersey, was not acquired by the petitioner and her husband in a transaction entered into for profit, though not connected with any trade or business. It was never appropriated or converted to a business use while held by the petitioner and her husband. The loss sustained upon the sale in 1947 of property at 77 Park Avenue, Elberon, New Jersey, was not a loss incurred in a trade or business, and it was not a loss resulting from a transaction entered into for profit. It was a personal loss. Opinion The petitioner contends that the house on Park Avenue in Elberon, New Jersey, was not the personal residence of herself and her family. She contends that the residence of herself and her family was an apartment at 170 East 77th Street, New York City. Making those contentions, the petitioner asserts that she was engaged in a business of buying and selling houses, and that the Park Avenue house was held primarily for sale to customers in the ordinary course of her business. Upon this theory, she *173 claims a loss deduction under section 23(e)(1) of the Internal Revenue Code. In the alternative, she asserts that the property in question was purchased for the purpose of resale; that residing in it was merely incidental; and that she is entitled to a deduction under section 23(e)(2) for a loss from a transaction entered into for profit. The petitioner relies upon the following cases: Henry J. Gordon, 12 B.T.A. 1191; W. W. Holloway, 19 B.T.A. 378; Marjorie G. Randall, 27 B.T.A. 475; and Westmore Willcox, 20 T.C. 38. The respondent contends that petitioner's residence was not in New York City; that the petitioner and her family used the property in Elberon, New Jersey, as their residence; and that under the facts, the loss is a capital loss and is not deductible under either (1) or (2) of section 23(e). The respondent relies upon his regulations, section 29.23(e)-1 of Regulations 111, the pertinent part of which is set forth in the margin [1]; and he cites R. C. Bayliss, 35 B.T.A. 1128., Howard Oots, 37 B.T.A. 571; and Dupuy G. Warrick, 44 B.T.A. 1068. *174 There is no merit whatsoever in petitioner's contention that the New York City apartment was the residence of herself and her family during 1947. The evidence shows that the petitioner and her family have maintained a residence in the shore region of New Jersey where the towns of Deal, Elberon, and West Long Branch are located since 1935 or 1936. It is possible that the petitioner and her husband occasionally made use of the apartment in New York where the mother and aunt of petitioner's husband lived. The record does not show the extent of such use. The record amply supports, on the other hand, the conclusion that petitioner and her husband were residents of New Jersey during 1947 and for several years before, and that the property at 77 Park Avenue, Elberon, New Jersey, was continuously, the family residence until it was sold. Petitioner's contention that she was engaged in a business for profit in 1947 finds no support in the record. We note that she did not earn income in 1947 from any interior decorating work. Her theory implies that she considers that, as part of an interior decorating business, she bought and sold houses. We cannot find from the record before us that she *175 was in a business of buying and selling houses, or in a business of interior decorating and buying and selling houses. There is testimony that petitioner had an interest in five houses in New Jersey during the period from 1935 or 1936 to 1954, i.e., up to the present time, about 18 years. Each one of the houses was used as a residence until it was sold. None of the houses was ever rented to others to produce income. Petitioner never sold a house which had not been used as her family residence. When a house used as a residence was sold, another house was purchased and used as a residence. The petitioner and her family resided in the Lawrence Avenue house from 1936 to 1941, 5 years; they lived in the Lincoln Avenue property from 1941 until some time in 1944, 3 years; they lived at 77 Park Avenue for 31 months. The facts here fall far short of meeting the test of what constitutes carrying on a business of buying and selling houses and real property. Cf. Boomhower v. United States, 74 Fed. Supp. 997; Dunlap v. Oldham Lumber Co., 178 Fed. (2d) 781. The property at 77 Park Avenue was not used in a trade or business regularly carried on by petitioner. See section *176 117(j). It was never appropriated to a business use. Cf. Joseph F. Cullman, Jr., 16 B.T.A. 991; Warren Leslie, Sr., 6 T.C. 488, 493. It is held that the property at 77 Park Avenue in Elberon was not held for use in a business carried on by petitioner, and, therefore, the loss does not come within section 23(e)(1). It is concluded, also, that the loss does not come within section 23(e)(2). That the petitioner had in mind the possibility of later selling the Park Avenue property for a profit, "is not sufficient to demonstrate that the profit motive remained dominant." Gevirtz v. Commissioner, 123 Fed. (2d) 707. The property was, upon purchase, appropriated to personal use as a family residence. Despite the testimony of petitioner and her husband, we are not convinced that the predominant purpose in acquiring the Park Avenue property was its resale at a profit. See Dupuy G. Warrick, supra; and R. C. Bayliss, supra. " Merely permitting the property to be offered for sale after deciding not to occupy it further is not sufficient to terminate the loss from residential use and initiate a new transaction for profit within *177 the meaning of section 23(e)(2), Rumsey v. Commissioner, 82 Fed. (2d) 158, certiorari denied, 299 U.S. 552; * * *", Warren Leslie, supra, p. 493. There are lacking facts to show that the predominant purpose throughout was to promote the sale of the property in question. The evidence does not show that from the time of purchase until the time of the sale the predominant purpose was to acquire and hold the property for sale at a profit. The mere listing of the property with brokers does not constitute such appropriation to a business use as to satisfy the statutory requirement. See Allen L. Grammar, 12 T.C. 34. The entire evidence falls short of establishing that the use and handling of the Park Avenue property made it such a "transaction" as meets the statutory requirement. The weight of authority is adverse to petitioner's claim for a deduction under section 23(e)(2). The claim is denied. Decision will be entered for the respondent. Footnotes
1. Regulations 111: Sec. 29.23(e)-1. Loss by individuals. - Losses sustained by individual citizens or residents of the United States and not compensated for by insurance or otherwise are fully deductible if (a) incurred in the taxpayer's trade or business, or (b) incurred in any transaction entered into for profit. * * * (d) if not prohibited or limited by any of the following sections of the Internal Revenue Code: Sections 23(g) and 117, relating to capital losses; * * *" * * *
A loss on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible. If, however, property so purchased or constructed is prior to its sale rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss from the sale of the property, computed as provided in section 111, is, subject to the limitations provided in section 117↩, an allowable deduction in an amount not to exceed the excess of the value of the property at the time it was appropriated to income-producing purposes (with proper adjustment for depreciation) over the amount realized from the sale.