Peter Seletos v. Commissioner.
Seletos v. Commissioner
Docket No. 61218.
United States Tax Court
T.C. Memo 1956-283; 1956 Tax Ct. Memo LEXIS 2; 15 T.C.M. (CCH) 1468; T.C.M. (RIA) 56283; December 31, 1956
William J. Hotz, Esq., City National Bank Building, Omaha, Neb., for the petitioner. Drew R. Tillotson, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion
*3 MULRONEY, Judge: Respondent determined deficiencies in income tax and additions to the tax of the petitioner, as follows: Addition
Addition to
to Tax
Tax Under
Under
Sec. 294
Sec.
Year
Tax
Deficiency
(d)(1)(A)
294(d)(2)
1952
Income
$1,889.83
$167.29
$108.53
The issues are (1) does the loss of $10,013.96 sustained by petitioner on the sale of residential property constitute a non-deductible personal loss or a loss incurred in a transaction entered into for profit; (2) is the petitioner entitled to a deduction for automobile depreciation and expenses in excess of $322; (3) was the petitioner's failure to file a declaration of estimaed tax due to reasonable cause or willful neglect; (4) did the petitioner substantially underestimate his estimated tax; and (5) is petitioner liable for the tax on self-employment income? Part of the facts were stipulated and they are so found. Petitioner is a resident of Omaha, Nebraska, and he filed a Federal income tax return for the calendar year 1952 with the district director of internal revenue at Omaha. Findings of Fact Petitioner, who was about 28 years old in 1950, was *4 unmarried, and he made his home with his mother and two sisters in a residence he owned in Omaha. On August 16, 1950, petitioner sold the above residence and two days later he purchased a lot on Ridgewood Road in Omaha and commenced the construction of a residential dwelling thereon. The initial financing for the construction of the new home consisted of about $15,000 of the proceeds of the sale of the old residence, deposited by petitioner with Conservative Savings and Loan Company of Omaha, and an additional $15,000 which he borrowed from the same company. Petitioner had paid the purchase price of the lot in the sum of $3,850, plus $7.98 tax. When the old residence was sold, petitioner and his mother and sisters moved into a duplex in Omaha and they lived there until the new residence was completed in August of 1951, when they moved into the new residence. The new residence cost the petitioner $71,520.38. Petitioner made efforts to sell the new residence, when it was about two-thirds completed, by listing it with a real estate broker and further similar efforts after it was either completed or nearly so. In September 1952, after petitioner and his mother and sisters had lived in *5 the house for a little over a year, petitioner sold the house for $61,506.42. The resulting loss on the sale was $10,013.96. At the time of the sale there were liens against the property on file in the Douglas County Courthouse in Omaha representing unpaid costs of construction of the house, in the sum of $47,304.69. At the time of the sale there was a petition on file in the Douglas County Courthouse against the petitioner seeking foreclosure of some of the liens against the property. The actual liens against the property at the time of sale, as shown by the disbursement of the proceeds of the sale, totaled at little less than $40,000. The loss sustained on the sale of the house in September 1952 was a non-deductible personal loss. On his 1952 income tax return the petitioner claimed deductions of $425 for automobile depreciation and $322 for automobile operating expenses. The Commissioner disallowed the $425 item, the notice of deficiency stating: "Your deduction of $425.00 for depreciation on your car is disallowed. The car expense of $322.00 is sufficiently large to include any allowable depreciation you might have on your car." Petitioner filed no declaration of estimated *6 tax during 1952. His failure to so file was due to reasonable cause and not to willful neglect. Petitioner earned self-employment income in excess of $3,600 during the year 1952. Opinion Petitioner argues the loss sustained on the sale of his house was deductible as a loss incurred in a transaction entered into for profit within the provisions of section 23(e)(2) of the Internal Revenue Code of 1939. [1] Petitioner admits he had no profit motive when he bought the lot and started constructing the house. He stated: "I made preparations to build a home on that property." He stated that after the building of the house had progressed to a certain point the building changed from a home for himself and his mother and sisters into "a property for profit." He fixes the point of construction when he abandoned the intent to occupy the house as a home as being when $30,000 had been paid for construction costs. He was building the house on a cost-plus contract and it was costing him much more than he anticipated. Before the construction was completed he listed the house with real estate brokers. This was probably when the house was about two-thirds finished but the brokers told him the house *7 should be completed in order to sell. The listed price was around $75,000. He explains the circumstance of his moving into the house with his mother and two sisters by saying that he was head of the family and had been for many years; that the house was close enough to completion for occupancy and realtors and other people had told him it would be a good selling point to have it occupied. He also said he feared vandalism if he left it unoccupied. Petitioner lived in the house about a year and he stated he had made arrangements for a $40,000 loan to pay off the unpaid construction obligations and this loan was available to him shortly before he sold the property. The question is one of fact and the controlling factor is the intent of the taxpayer. *8 Dupuy G. Warrick, 44 B.T.A. 1068. Petitioner's whole argument is that there was a conversion from personal residence use to one of profit-seeking when the house was about two-thirds completed. His assertion of his intent is of little value when his subsequent conduct is inconsistent with his stated intent. The fact remains he bought a lot for the purpose of erecting a home to live in. He built the house and moved into it as soon as it was completed and lived there over a year. The mere listing of the house for sale as a completed home at a price that would return him a nice profit would not cause the transaction to lose the characteristics of the acquisition of a home and take on the characteristics of a "transaction entered into for profit", within the meaning of the statute. Warren Leslie, Sr., 6 T.C. 488. Admittedly no profit-seeking motive was present at the inception of the transaction. The evidence does not show abandonment of the home-seeking motive. It shows no more than the presence of a rather common motive amongst those who acquire homes, - a willingness or even a desire to sell out at a profit. A home owner's expressed desire to sell the property *9 he is presently putting to home use does not immediately cause the property to take on a new profit-making use. Another obstacle in the way of any holding that this was not a personal loss would be the lack of any showing as to the basis of the property in the alleged new use. Warren Leslie, Sr., supra. Petitioner argues the evidence shows he could have financed the house in that he could get a $40,000 loan to pay off the construction liens and this shows he did not wish to have the property for himself. The evidence of the available loan is merely petitioner's statement that such a loan from some unnamed source was made available to him through the offices of an attorney. In any event, the evidence of petitioner seeking a loan to pay off liens is understandable when action for foreclosure of some of the liens was in progress. We do not feel this evidence illustrates an intent not to keep the residence as a home either then or earlier. On the whole record we are convinced petitioner failed to establish the Commissioner was wrong in disallowing any deduction for the loss sustained on the sale of the house. We are somewhat at a loss as to how to deal with the second *10 issue with respect to the car expense and depreciation. Respondent points to the failure on the part of petitioner to produce books and records to establish the deduction of $322 for car expense. But this item was not disallowed. The Commissioner disallowed the $425 item on the income tax return for automobile depreciation. The reason given by the Commissioner - that the car expense item is sufficiently large to include any allowable depreciation - cannot frame the issue here. The fact remains the taxpayer took a deduction on his income tax return of $322 for an item of car expense which may or may not have been too large, but it was not disallowed. He also took a deduction for car depreciation, as he had a right to do, and this item was disallowed. The disallowance of this item was alleged as error in the petition and petitioner had the burden of proof on this item, not the $322 car expense item. The certified public accountant who made up the return and who had taken care of the books and records of petitioner since 1947, testified how he arrived at the car depreciation item. He said the car was used one-half for pleasure and one-half for business and it was depreciated by using *11 one-half of the cost basis at 20 per cent a year, which was $425. Respondent seems to admit petitioner would be entitled to some car depreciation. Five years is accepted generally as the life of the automobile. See Bulletin F (Revised 1942). He testified the car expense item of $322 which was not disallowed was arrived at by tabulating all of the car expenses and charging one-half to business. While petitioner's proof is very inadequate we are disposed to allow some car depreciation. We fix the sum at $200. The Commissioner determined that the petitioner was liable for the addition to the tax provided by section 294(d)(1)(A), Internal Revenue Code of 1939, because of his failure to file a declaration of estimated tax. Petitioner argues his failure to file the required declaration was due to reasonable cause and not to willful neglect. It is abundantly clear from petitioner's testimony that he did not know anything about the law and he relied entirely on the certified public accountant who took care of his books and records and took care of his income tax matters. The accountant testified that he knew of the law but he did not file the estimate because petitioner was getting so *12 deeply involved in the house deal it was apparent to him there would be a deductible loss and, too, at that time the government was not very strict about filing estimated tax returns. Neither reason has any merit but the question is whether petitioner is shielded from the addition imposed by the fact that he relied on his accountant. The accountant testified he had been taking care of petitioner's books and records since 1947 and he had access to all of these books and records in connection with the year 1952 when he was performing income tax services for petitioner by filing returns or preparing them for petitioner to file. Thus the record establishes reliance by petitioner on the certified public accountant and it establishes full disclosure to the certified public accountant. Respondent argues one other requisite, namely, a showing that the certified public accountant was qualified to advise or represent petitioner in tax matters, was lacking. That this is also a prerequisite when the defense against the addition is reliance on a tax advisor, see Rene R. Bouche, 18 T.C. 144. The reasons the certified public accountant gave for not filing the proper estimates might indicate *13 lack of qualifications. But the accountant had had some years of experience in handling tax matters and he knew of the law requiring the filing of estimates. As far as petitioner is concerned, he relied upon an experienced certified public accountant. We feel that under these facts it cannot be held that petitioner's failure to file the estimates was due to willful neglect. Reliance Factoring Corporation, 15 T.C. 604. Respondent was correct in determining petitioner substantially underestimated his estimated tax under the provisions of section 294(d)(2). G. E. Fuller, 20 T.C. 308. Petitioner makes no argument that he is not liable to the self-employment tax in the amount of $81 under sections 480, 481(a) and 481(b), Internal Revenue Code of 1939. The Commissioner's determination with respect to the self-employment tax is sustained. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *↩